## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **O'BENCO IV, LP** | ) | **Case No. 19-60384** |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S EMERGENCY MOTION FOR (A) ENTRY OF AN ORDER
(I) APPROVING BIDDING PROCEDURES; (II) APPROVING PROCEDURES FOR
THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; (III) SCHEDULING BIDDING DEADLINE, AUCTION DATE,
AND SALE HEARING DATE; (IV) APPROVING FORM AND NOTICE THEREOF; (B)
ENTRY OF AN ORDER AFTER THE SALE HEARING (I) AUTHORIZING THE
DEBTOR TO SELL ITS ASSETS; AND (II) AUTHORIZING THE DEBTOR TO
ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; AND (C) APPROVAL OF RELATED RELIEF**

**21-DAY NEGATIVE NOTICE – LBR 9007(a):**

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion/Objection/Application unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

O'BENCO IV, LP, the above-captioned debtor and debtor in possession (the "<u>Debtor</u>")

hereby moves, on an emergency basis, for (a) entry of an order, substantially in the form filed

herewith, (i) approving bidding procedures, (ii) approving procedures for the assumption and

assignment of executory contracts and unexpired lease, (iii) scheduling bidding deadline, auction

date, and sale hearing date; (iv) approving form and notice thereof; (b) entry of an order after the

sale hearing (i) authorizing the Debtor to sell substantially all of its assets (the "Assets") to the

Successful Bidder (as defined below) free and clear of liens, claims and encumbrances, and (ii)

authorizing the Debtor to assume and assign certain executory contracts and unexpired leases;

and (c) approval of related relief.   In support of this Motion, the Debtor respectfully states as

follows:

## I.  JURISDICTION & VENUE

1.      The United States Bankruptcy Court for the Eastern District of Texas

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are §§ 105(a) and 363 of title 11 of the

United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 9007 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.  BACKGROUND

4.      The Debtor is a Delaware limited partnership established to provide an

institutional quality, low cost platform for investors to participate in the oil and gas exploration

and development space.   The Debtor is operated by O'Brien Resources, LLC, which is the

managing member of the general partner of the Debtor.

5.      On June 3, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.

6.      A full description of the Debtor's business, corporate structure, prepetition

indebtedness, and events leading to this chapter 11 case is set forth in the *Declaration of William*

*J. O'Brien IV, President and Chief Operating Officer, in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"), incorporated herein by reference.

**B.    Description of Secured Debt[1]**

7.    The Debtor is a borrower under that certain credit agreement dated January 10, 2017 (as amended by that certain First Amendment to Credit Agreement dated as of January 12, 2018, as further amended by that certain Second Amendment to Credit Agreement dated as of January 15, 2019, and as further amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), whereby certain financial institutions party thereto are lenders (the "Secured Lenders"), and Associated Bank, N.A. is the Administrative Agent ("Administrative Agent").  The Credit Agreement is secured by liens and security interests in substantially all of the Debtor's assets pursuant to that certain security agreement dated January 10, 2017, between the Debtor and the Administrative Agent, as well as certain Deeds of Trust, Mortgages, Assignments, Security Agreements, Fixture Filings, and Financing Statements dated January 10, 2017, between the Debtor and Timothy Brendel, as Trustee for the benefit of the Administrative Agent.

**C.    Debtor's Assets**

8.    The Debtor owns non-operating oil and gas working interests located primarily in East Texas, with additional non-operating interests in West Texas, Kansas, Arkansas, Louisiana, and Mississippi.  The core East Texas assets include a strong gas-weighted PDP foundation, with a compelling and technically de-risked stacked pay oil-weighted development opportunity. In total, the Debtor's real property Assets cover approximately 87,400 net acres and approximately

---

[1] The Debtor does not consent to the extent, validity, or priority of any liens in Debtor property and all such liens are currently under investigation.  The Debtor reserves all rights with respect to all prepetition liens.

#5928469

130 gross producing wells.   Additionally the Debtor owns approximately 90 miles of related midstream assets.

**D.      Debtor's Marketing Efforts**

9.      The Debtor first engaged Houlihan Lokey, Inc. ("Houlihan Lokey") in November 2018 to assist the Debtor in efforts to raise capital to both refinance the Debtor's balance sheet and provide additional development capital.   As part of this effort, Houlihan Lokey reached out to approximately 90 parties.   Four indications of interest were received, however, they were each far below the company's existing debt balance.   Consequently, in March 2019, the Debtor instructed Houlihan Lokey to commence a divestiture marketing process for substantially all of the Debtor's assets.

10.      Houlihan Lokey contacted approximately 149 additional oil and gas exploration and production companies as part of the asset market campaign.   While several substantive offers were received, the Secured Lenders deemed them to be either unreliable or undervalued.   After consultation with its advisors and the Secured Lenders, the Debtor determined that a sale consummated through a section 363 sale process would maximize value for its stakeholders.   Consequently, the Debtor intends to continue its marketing efforts in chapter 11, led by Houlihan Lokey.   The Debtor will file a separate motion seeking the retention of Houlihan Lokey as the Debtor's investment banker.

## III.  RELIEF REQUESTED

11.      By this Motion, the Debtor seeks (a) entry of an order (the "Bidding Procedures Order") (i) approving bidding procedures (the "Bidding Procedures")[2] in connection with the sale of the Debtor's Assets, (ii) scheduling a bid deadline, auction date, and sale hearing date as

---

[2] Capitalized terms used herein and not otherwise defined shall be given the meaning ascribed to them in the Bidding Procedures.

#5928469

set forth below and (iii) approving form and notice thereof. The Bidding Procedures contemplate the following schedule:

- <u>Bid Deadline</u>: July 25, 2019 at 4:00 p.m. Prevailing Central Time as the last date by which any potential purchaser may deliver its Bid by email to counsel for the Debtor.

- <u>Auction Date</u>: July 30, 2019, at 10:00 a.m. Prevailing Central Time as the date and time that the Auction, if one is needed, will be held at the offices of Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002, or at another location as may be timely disclosed by the Debtor to Qualified Bidders.

- <u>Sale Hearing</u>: August 1, 2019, at a time to be determined by the Court, or as soon thereafter as the Court's calendar permits, to consider approval of the Sale.

In addition, the Debtor seeks, at the conclusion of the Sale Hearing (defined below), entry of an order (a) authorizing the sale of the Debtor's Assets to an entity that is the Successful Bidder, with such sale being free and clear of all liens, claims, and encumbrances, (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases to the Successful Bidder, and (c) granting certain related relief (the "<u>Sale Order</u>").

## A.    Proposed Bidding Procedures

12.    Pursuant to this Sale Motion, the Debtor seeks to sell substantially all of the Debtor's Assets, as well as assume and assign certain executory contracts and unexpired leases. Pursuant to Bankruptcy Rule 6004(f), sales of property outside the ordinary course of business may be by private sale or auction. The Debtor believes that good cause exists to sell the Debtor's Assets at auction. An auction conducted substantially in accordance with the proposed Bidding Procedures will enable the Debtor to obtain the highest and best offer for the Assets thereby maximizing the value of the Assets for the benefit of the Debtor's creditors.

13.    The Debtor submits that the Bidding Procedures will permit interested parties reasonable opportunity to evaluate whether to propose a bid for the Assets. The Bidding

Procedures ensure that the Debtor will undertake a marketing and sales process designed to maximize value for the Debtor's estate.  The Bidding Procedures are summarized as follows:[3]

(a)   <u>Participation Requirements</u>:  Any person seeking to conduct due diligence on the Assets and participate in the bidding must become a "Diligence Party."  As a prerequisite to becoming a Diligence Party, any interested party: (a) must deliver an executed confidentiality agreement in form and substance reasonably acceptable to the Debtor in consultation with the Agent;[4] and (b) must be able, as determined by the Debtor in consultation with its financial advisor and the Agent, to consummate a transaction based upon a Qualifying Bid (as defined below).  The Debtor, in consultation with the Agent, reserves the right (i) at any time to require any Diligence Party to provide additional evidence of its ability to consummate a transaction based upon a Qualifying Bid (as defined below), and (ii) to exclude any such Diligence Party from participating further in the auction process as a result of its inability to satisfy such further requirements.  The confidentiality agreements executed by Diligence Parties shall inure to the benefit of the Successful Bidder following the closing of the Sale transaction.

(b)   <u>Due Diligence</u>: The Debtor, with the assistance if its financial advisor, Houlihan Lokey ("<u>HL</u>"), shall afford any Diligence Party the time and opportunity to conduct reasonable due diligence. This will include, without limitation, an opportunity for Diligence Parties to inspect the Assets and receive copies of, among other things, all engineering reports regarding reserves, all production reports, all deeds and leases for oil and gas rights and all title opinions and information. The due diligence period shall extend through and include the Bid Deadline (as defined below). The Debtor and its representatives shall not be obligated to furnish any due diligence information after the Bid Deadline. Diligence inquiries should be made to:

---

[3] The description of the Bidding Procedures provided herein is a summary and is qualified in its entirety by reference to the Bidding Procedures attached hereto as **Exhibit A**.  Also attached hereto are the Sale Notice (**Exhibit B**) and the Cure Notice (**Exhibit C**), all as defined in this Sale Motion.

[4] For the avoidance of doubt, parties who have already executed a confidentiality agreement with the Debtor shall not be required to execute a new confidentiality agreement provided that the existing confidentiality agreement is in form and substance acceptable to the Debtor in consultation with the Agent.

#5928469

Houlihan Lokey
1001 Fannin Street, Suite 4650
Houston, TX 77002
Attn: Jerry Eumont
JEumont@HL.com
Attn: Joshua Eaves
JEaves@HL.com
(832) 319-5119

For the avoidance of doubt, the Agent and its advisors shall be provided prompt access to all executed Confidentiality Agreements and due diligence materials, including without limitation any management presentations, on-site inspections, and any other information provided to any Diligence Party that was not previously made available to the Agent. The Debtor and HL shall consult with the Agent and its advisors regarding materials produced in connection with the Sale, including without limitation the form of confidentiality agreement and any marketing materials or information memoranda or "teasers."  In addition, HL shall (a) hold weekly Sale update conferences with the Agent and its financial advisors and (b) provide weekly reporting to the Agent's financial advisors, including without limitation (i) a written log containing a summary of HL's correspondence (phone, email, etc.) with potential interested parties, including Diligence Parties, (ii) a written summary of marketing activity including parties contacted and current status (e.g., parties under Confidentiality Agreements, indications of interest/letters of intent received, parties scheduled for management/advisor presentations, site visits, etc.), and (iii) a written log of diligence activities and status of fulfilling requests.

(c)    <u>Bid Requirements</u>:  To be deemed a "<u>Qualifying Bid</u>," a bid must be received from a Diligence Party by a date no later than the Bid Deadline (as defined below) that satisfies each of the following conditions:

(i)    <u>Purchase Price</u>.  Each bid must identify the cash consideration to be paid for relevant the Assets ("<u>Purchase Price</u>");

(ii)    <u>Executed Agreement</u>.  Each bid must be accompanied by (a) a duly executed asset purchase agreement (the "<u>Modified APA</u>"); and (B) a marked Modified APA reflecting any variations from the "Form APA," which will be provided to Diligence Parties by the Debtor;[5]

(iii)    <u>Irrevocable</u>.  Each bid must expressly provide that (a) the offer reflected in the bid is irrevocable until the conclusion of the Auction, provided that if such party is designated as the Successful Bidder or the Back-up Bidder (each, as defined below) then such

---

[5] The Form APA is attached hereto as **Exhibit E**.

offer shall remain open and irrevocable until the closing of the Sale or the Outside Back-up Date as described below and (b) if such party is selected as the Successful Bidder, then such party will take all commercially reasonable steps to consummate the transaction set forth in the Modified APA within 15 days of entry of the Sale Order and satisfaction of the closing conditions (if any) set forth in the Modified APA;

(iv)    <u>Bound to Bid Procedure Terms</u>.  Each bid must state that the bidder agrees to be bound by the terms of the Bidding Procedures Order and the Bidding Procedures;

(v)    <u>Proof of Financial Ability to Perform</u>.  Each bid must contain such financial and other information that allows the Debtor and HL to make a reasonable determination, in consultation with the Secured Lenders, as to the Qualifying Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified APA, including, without limitation, such financial and other information setting forth adequate assurance of future performance.  Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments, if needed to close the transaction, contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtor necessary to demonstrate that such party has the ability to close the transaction;

(vi)    <u>Designation of Contracts and Leases</u>.  Each bid must identify with particularity each and every executory contract and unexpired lease, the assumption and, as applicable, assignment of which is a condition to closing; *provided* that the Modified APA may allow for the Qualifying Bidder to identify additional contracts prior to the closing or at such other date as agreed by the Debtor;

(vii)    <u>Regulatory and Third Party Approval</u>.  Each bid must identify each regulatory and third-party approval required for the bidder to consummate the Sale, if any, and the time period within which the bidder expects to receive such regulatory and third-party approvals;

(viii)    <u>Disclosure of Identity of Bidder</u>.  Each bid must fully disclose the identity of each entity that will be bidding in the Auction or otherwise participating in connection with such bid, and the complete terms of any such participation;

#5928469

(ix) <u>Contingencies</u>.   Each bid shall (i) not contain any financing contingencies of any kind; (ii) not contain any conditions to closing other than the conditions precedent identified in the Modified APA; (iii) not contain any due diligence contingency; and (iv) contain evidence that the bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to consummate the Sale, which evidence is reasonably satisfactory to the Debtor in consultation with the Secured Lenders;

(x) <u>Authorizations</u>.   Each bid must include written evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and performance of the Modified APA that is acceptable to the Debtor in consultation with the Secured Lenders;

(xi) <u>No Break-Up Fees</u>.   Bid may not request or entitle the bidder to any break-up fee, expense reimbursement, termination fee or similar type of payment or bid protection; and

(xii) <u>Good Faith Deposit</u>.   Each bid must be accompanied by a purchase deposit equal to or greater than 10% of the total Purchase Price.

(d) <u>Qualifying Bids</u>: A competing bid meeting the above requirements shall constitute a "Qualifying Bid" and the party submitting such bid shall constitute a "Qualifying Bidder."  The Debtor, in consultation with the Secured Lenders, shall make a determination regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be qualified by no later than **4:00 p.m. (Prevailing Central time) on July 26, 2019**.

(e) <u>Aggregate Bids</u>:  Persons who collectively are referred to as a "Qualifying Bidder" need not be affiliates and need not act in concert with one another, and the Debtor may aggregate separate bids from unaffiliated persons to create one "bid" from a "Qualifying Bidder"; provided, however, that all bidders shall remain subject to the provisions of Bankruptcy Code section 363(n) regarding collusive bidding.  Nothing contained herein shall prevent the consideration of bids for less than all Assets, and the Debtor, in consultation with the Secured Lenders, may make any modifications to the Bidding Procedures as necessary to accommodate such a bid as they determine is in the best interests of the estate.

(f) <u>Bid Deadline</u>: A Qualifying Bidder that desires to make a bid shall deliver a written or electronic copy of its bid to counsel to the Debtor, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002 (Attn: William A. (Trey) Wood III, email: Trey.Wood@bracewell.com and Jason G. Cohen, email: Jason.Cohen@bracewell.com) so as to be received by a

date **no later than 4:00 p.m. (Prevailing Central Time) on July 25, 2019 (the "Bid Deadline")**.  Counsel to the Debtor shall promptly notify counsel to the Secured Lenders of all bids received and provide copies of all such bids to counsel to the Secured Lenders.

(g)     Evaluation of Qualifying Bids:  At least 48 hours prior to the Auction, the Debtor shall determine, in its reasonable judgment after consultation with the Debtor's financial and legal advisors and the Secured Lenders, which Qualifying Bid (including aggregated Qualifying Bids if appropriated as provided herein) is or are likely to result in the highest and best value to the Debtor's estate, and shall provide a copy of that Qualifying Bid or Qualifying Bids to all Qualifying Bidders prior to the beginning of the Auction.  The Debtor may discuss or clarify the terms of the Qualifying Bids with the Qualifying Bidders prior to such date, but no modifications may be made to the Qualifying Bids after the Bid Deadline without the Debtor's prior written consent, in consultation with the Secured Lenders.

(h)     Auction:  In the event that the Debtor timely receives two or more Qualifying Bids, the Debtor shall conduct an auction (the "Auction") starting at **10:00 a.m. on July 30, 2019 (the "Auction Date")** at the law offices of Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002.  In the event that only one Qualifying Bid is timely received, the Debtor shall declare that bid to be the Successful Bid and the Auction shall be canceled.   The Auction shall be governed by the following procedures:

(i)     Only Qualifying Bidders who have made a Qualifying Bid shall be entitled to make any subsequent bids at the Auction;

(ii)    Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

(iii)   Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative;

(iv)    Bidding shall commence at the amount of the highest Qualifying Bid as determined pursuant to Paragraph (g) above;

(v)     Each Qualifying Bidder may then submit successive bids in increments of at least $250,000.00 higher than the bid at which the Auction commenced and then continue in minimum increments of at least $250,000.00 higher than the previous bid; provided that the Debtor, in consultation with the Secured Lenders, shall retain the right to modify the bid increment requirements at the Auction;

-10-

#5928469

(vi)    The Auction will be conducted openly and shall be transcribed or recorded, and the Qualifying Bidders will be informed of the terms of the previous bid;

(vii)   Qualifying Bidders shall have the right to submit additional bids and make additional modifications to the Modified APA at the Auction, provided that any such modifications to the Modified APA on an aggregate basis and viewed in whole, shall not be less favorable to the Debtor's estate, as determined by the Debtor in consultation with the Secured Lenders, than the terms of the highest and best Qualifying Bid at that time;

(viii)  The Auction shall continue until there is only one bid that the Debtor determines in consultation with the Secured Lenders, subject to Court approval, is the highest or best from among the Qualifying Bids submitted at the Auction (the "Successful Bid"). In making this decision, the Debtor shall consider, without limitation, the amount of the Purchase Price or other amounts to be paid to the Debtor, the form of consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Form APA requested by each bidder, and the net benefit to the Debtor's estate. The bidder or bidders submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable Modified APA;

(ix)    The Debtor will determine in consultation with the Secured Lenders which Qualifying Bid, if any, is the next highest and/or best Qualifying Bid to the Successful Bid, and will designate such Qualifying Bid as a back-up bid ("Back-up Bid") to be consummated in the event the Successful Bid fails to consummate the contemplated sale transaction. There may be more than one Back-up Bid if aggregated Qualifying Bids are determined to be Back-up Bids. A Qualifying Bidder that submitted a Qualifying Bid that is designated as a Back-up Bid is a "Back-up Bidder." Each Back-up Bid shall remain open and binding until the Outside Back-up Date;

(x)     At the Sale Hearing, the Debtor shall present the Successful Bid and Back-up Bid to the Court for approval. The Debtor's presentation of the announced Successful Bid to the Court for approval does not constitute the Debtor's acceptance of such Successful Bid. The Debtor shall have accepted such Successful Bid only when approved by the Court;

-11-

(xi) Within fifteen (15) calendar days after the entry of the Sale Order, each Successful Bidder and the Debtor (i) shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which such Successful Bid was made, and (ii) shall close the sale transaction; and

(xii) The Debtor in consultation with the Secured Lenders may adopt such other rules for the Auction (including rules that may depart from those set forth herein) that they anticipate will result in the highest or otherwise best value for the Debtor's estate and that are not inconsistent with any applicable Bankruptcy Court order, provided that any changed or additional rules of the Auction are not materially inconsistent with the Bidding Procedures and are communicated to all participants at or prior to the Auction.

(i) <u>Sale Hearing</u>: The Successful Bid will be subject to approval by the Bankruptcy Court.  The Debtor requests that the hearing to approve the Successful Bid **(the "<u>Sale Hearing</u>") take place on August 1, 2019, or as soon thereafter as the Court's calendar permits**, at a time to be determined by the Court, unless adjourned or continued by the Debtor.  At such time, the Debtor will seek the entry of an order of the Bankruptcy Court approving and authorizing the Sale to the Successful Bidder on the terms and conditions of the Successful Bid.  The Successful Bidder shall appear at the Sale Hearing and be prepared to testify in support of the Successful Bid and the Successful Bidder' ability to close in a timely manner and provide adequate assurance of its future performance under any and all contracts and leases to be assumed and/or assigned as part of the proposed Sale.

(j) <u>Return of Deposits</u>: Except as provided herein, all deposits shall be returned to each bidder not selected by the Debtor as a Successful Bidder no later than five (5) business days following the conclusion of the Auction, except for any Back-up Bidder (as defined above) whose deposit will be returned by no later than the third (3rd) business day after the earlier to occur of: (a) the closing of the sale transaction with the relevant Successful Bidder or (b) the Outside Back-up Date.

(k) <u>Failure to Consummate Purchase</u>: The Back-up Bidder shall keep its bid open and irrevocable until the earlier of 5:00 p.m. (Prevailing Central time) on the date which is (i) the Outside Back-up Date or (ii) the closing of the Sale transaction with the Successful Bidder.  Following the Sale Hearing, if any Successful Bidder fails to consummate an approved Sale because of (a) the failure of a condition precedent beyond the control of either the Debtor or the Successful Bidder or (b) a breach or failure to perform on the part of such Successful Bidder, the Back-up Bidder will be

deemed to be the new Successful Bidder, and the Debtor will be authorized to consummate the Sale with the Back-up Bidder without further order of the Bankruptcy Court. In the case of (b) above, the defaulting Successful Bidder's deposit shall be forfeited to the Debtor as the Debtor's sole remedy with respect to the defaulting Successful Bidder.

(l)     <u>Reservation of Rights; Deadline Extension</u>: The Debtor reserves its rights, in the exercise of its fiduciary obligations and, with the consent of the Secured Lenders (not to be unreasonably withheld), to modify these Bidding Procedures or impose at, or prior to, the Auction, additional customary terms and conditions on the Sale of the Assets, including, without limitation, extending the deadlines set forth in the Auction procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, withdrawing from the Auction the Assets at any time prior to or during the Auction or canceling the Auction in the Debtor's business judgment.

(m)     <u>Emergency Hearing</u>: The Debtor and the Agent agree that in the event of any dispute regarding the Sale process outlined herein, (i) either party may seek an emergency hearing requesting that the Court resolve such dispute and (ii) the other party shall consent to such request for an emergency hearing.

(n)     <u>Sale As Is/Where Is</u>: The Assets sold pursuant to the Bidding Procedures shall be sold free and clear of all liens claims and encumbrances as permitted by section 363(f) of the Bankruptcy Code other than any assumed liabilities as set forth in the applicable APA and conveyed at closing in their then-present condition, "**AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**", except to the extent set forth in the definitive agreement for the Successful Bid, if applicable; *provided* that any such sale shall be subject to the rights of any DIP Lender or Prepetition Lender or other party in interest to object to the extent otherwise set forth herein.

**B.     Approval of Notice Procedures**

14.     Under Bankruptcy Rule 2002(a) and (c), the Debtor is required to notify its creditors of the proposed sale of the Assets, including a disclosure of the time and place of the Auction, the terms and conditions of the sale, and the deadline for filing any objections thereto. The proposed sale notice (the "<u>Sale Notice</u>"), attached hereto as **Exhibit B**, contains the type of information required under Bankruptcy Rule 2002(c) and also includes information on the

#5928469

Bidding Procedures.  This information will enable interested parties to participate in the Auction and Sale Hearing if they choose.  Accordingly, the Debtor requests that the Court approve the form and content of the Sale Notice.

15.    The Debtor will provide notice of this Sale Motion to the parties listed on Debtor's Master Service List.  The Debtor proposes to serve the Sale Notice, together with the Bidding Procedures, within five (5) business days after the entry of the Order approving the relief requested herein (the "Bidding Procedures Order") upon (i) counsel to any committee appointed in these cases; (ii) the United States Trustee for the Eastern District of Texas; (iii) all other parties known to the Debtor who have or may have asserted liens against any of the Assets; (iv) the Debtor's thirty (30) largest unsecured creditors (on a consolidated basis); (v) all parties that have requested notice pursuant to Bankruptcy Rule 2002; and (vi) all parties known to have expressed an interest in a transaction with respect to all or a part of the Assets.

16.    Not later than five (5) business days following the entry of the Bidding Procedures Order, the Debtor shall cause the Sale Notice to be published once in a national edition of a United States newspaper.

17.    The notices to be provided and the method of service proposed herein constitute good, proper and adequate notice of the sale of the Assets and the proceedings to be had with respect thereto (including, but not limited to, the Auction and the Sale Hearing).  Therefore, the Debtor respectfully requests that this Court approve the foregoing notice procedures.

**C.    Approval of Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases**

18.    To facilitate and effect the Sale, to the extent necessary, the Debtor may be required to assume and assign to the Successful Bidder certain executory contracts and unexpired leases (the "Assigned Contracts").  The Debtor shall cause notice to be provided to any

#5928469

counterparties to such Assigned Contract by July 1, 2019 (the "Cure Notice"). The Cure Notice shall provide the counterparties to such Assigned Contracts notice of the amount that the Debtor believes must be cured upon assumption and assignment as required under Bankruptcy Code § 365 (the "Cure Amount").

19. Any objections to the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice, including, but not limited to, objections relating to adequate assurance of future performance or to the Cure Amounts set forth in the Cure Notice, must be in writing and filed with the **Court no later than 4:00 p.m. (Prevailing Central Time) on July 22, 2019** (the "Cure Notice Objection Deadline").

20. If no timely objection to the assumption and assignment of a particular executory contract or unexpired lease is received, then the Cure Amount set forth in the Cure Notice will be binding upon the non-debtor party or parties to the Assigned Contract for all purposes in this chapter 11 case and otherwise. All such counterparties to the Assigned Contracts will (a) be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts with respect to the Assigned Contracts, (b) be deemed to have consented to the assumption and assignment, and (c) be forever barred and estopped from asserting or claiming against the Debtor or the Successful Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assigned Contracts or that there is any objection or defense to the assumption and assignment of such Assigned Contracts.

21. If a non-debtor counterparty to an Assigned Contract files an objection to assumption or assignment, whether based on Cure Amount, adequate assurance of future performance, or any other alleged cause or claim, then, to the extent the relevant parties are not

-15-

#5928469

able to consensually resolve the dispute prior to the Sale Hearing, such dispute shall be heard and resolved at the Sale Hearing.

22.     While the Debtor shall make a good faith effort to identify all contracts and leases to be assigned in connection with the Sale, it may discover additional contracts or leases that the Debtor or the Successful Bidder wish to assume and assign in connection with the Sale. Accordingly, if at any time after the Cure Notice is served the Debtor identifies additional prepetition executory contracts and or leases to be assigned to the Successful Bidder the Debtor shall serve a supplemental Cure Notice by first class mail, facsimile, electronic transmission, or overnight mail on the contract counterparty (and its attorney, if known) to each supplemental Assigned Contract by no later than ten (10) days before the Sale Hearing. Each supplemental Cure Notice shall set forth the following: (i) the name and address of the contract counterparty, (ii) notice of the proposed effective date of the assignment (subject to the right of the Debtor and the Bidder to withdraw such request for assumption and assignment of the Assigned Contract prior to Closing), (iii) identification of the Assigned Contract, and (iv) the Cure Amount, if any.

23.     Unless the contract counterparty or any other entity properly files an objection to the supplemental Cure Notice prior to the Sale Hearing, the Debtor may assume and assign the Assigned Contract subject to the occurrence of the Closing, without further order or notice of hearing. If an objection is filed and served prior to the Sale Hearing, and the objection cannot be resolved consensually, such dispute shall be heard and resolved at the Sale Hearing.

24.     Except as may otherwise be agreed to by parties to an Assigned Contract, all Cure Amounts shall be paid as administrative expenses.

#5928469

## IV.  ARGUMENTS AND AUTHORITIES

**A.    The Bidding Procedures are Fair and are Designed to Maximize the Value Received for the Assets Given the Financial Exigencies Facing the Debtor**

25.    The Bidding Procedures proposed herein are designed to maximize the value received for the Assets by facilitating a competitive bidding process in which all Potential Bidders are encouraged to participate and submit competing bids, taking into account the financial exigencies facing the Debtor.  The Bidding Procedures provide Potential Bidders with more than the twenty-one days' notice envisioned by Rule 2002 of the Bankruptcy Rules, which provides sufficient notice and opportunity to acquire the information necessary to submit a timely and informed bid.  The Debtor believes that the period between the filing of this Sale Motion and the deadline for submission of bids provides a reasonable means for maximizing the return from sale of the Assets, especially in light of the prepetition marketing efforts described above.

26.    At the same time, the Bidding Procedures provide the Debtor with the opportunity to consider all competing offers and to select the highest or best offer for the completion of a Sale.  The Bidding Procedures and Auction process will ensure that the consideration paid for the Assets will be fair, reasonable, and in the best interest of the Debtor's estate and creditors, and there are sound business reasons to approve the Bidding Procedures.

**B.    A Successful Bidder Should be Entitled to the Protections of Bankruptcy Code Section 363(m)**

27.    Pursuant to Bankruptcy Code section 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *See Miami Ctr. Ltd. P'ship v. Bank of New York*, 838 F.2d 1547, 1554 (11th Cir. 1988); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d

1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, Case No. 03-51524, 2007 WL 1428477 (Bankr. D.N.J. May 11, 2007).

28.     The Debtor will demonstrate at the Sale Hearing that the final Modified APA with the Successful Bidder was negotiated at arm's-length, with each of the parties represented by its own advisors and counsel.  Accordingly, the Debtor requests that the Sale Order include a provision that the Successful Bidder for the Assets is a "good faith" purchaser within the meaning of Bankruptcy Code section 363(m).  The Debtor maintains that providing the Successful Bidder with such protection will ensure that the maximum price will be received by the Debtor for the Assets.

## C.   The Debtor Has Exercised Sound Business Judgment and Provided Adequate Notice and Opportunity to Object With Respect to Assigned Contracts

29.     Bankruptcy Code § 365(a) provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection.  *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Gucci*, 193 B.R. 411 (S.D.N.Y. 1996).  Under the business judgment test, a court should approve a debtor's proposed assumption if such assumption will benefit the estate.  *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 53-54 (Bankr. Del. 2001); *see also, In re Chi-Feng, Huang*, 23 B.R. 798, 801 (B.A.P. 9th Cir. 1982); *In re Gunter Hotel Assocs.*, 96 B.R. 696, 698 (Bankr. W.D. Tex. 1988); *In re Food City, Inc.* 94 B.R. 91, 93-94 (Bankr. W.D. Tex. 1988).  Moreover, a debtor's decision to assume an executory contract or unexpired lease should be accepted "except upon a finding of bad faith or gross abuse of [the debtor's] business discretion."*Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., (In*

*re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1047 (4th Cir. 1985). "More exacting scrutiny would slow the administration of the debtors' estates and increase its cost, interfere with the Bankruptcy Court's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."*Richmond Leasing*, 762 F.2d at 1311.

30.     Two conditions are imposed upon a debtor's ability to assume and assign an executory contract.   First, in order to assume an agreement, pursuant to Bankruptcy Code § 365(b)(1), a debtor must "cure, or provide adequate assurance that the debtor will promptly cure" any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1).   Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract.   Bankruptcy Code § 365(f) specifically provides that contract provisions seeking to prohibit or limit assignment are unenforceable. *See* 11 U.S.C. § 365(f)(1); *see also, e.g.*, *In re Office Prods. of Am., Inc.*, 140 B.R. 407, 409-410 (Bankr. W.D. Tex. 1992) (provisions that work as a restriction on assignment of leases should be struck down); *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he code generally favors free assignability as a means to maximize the value of the debtor's estate").

31.     Pursuant to Bankruptcy Code § 365(a), assignment is conditioned on "adequate assurance of future performance [being] provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."*See Carlisle Homes. Inc. v. Arrari (In re Carlisle Homes,* Inc.*)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that the debtor will thrive).   Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the

type of enterprise or property assigned.  *Accord In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr.

S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee

of lease from the debtor has financial resources and has expressed willingness to devote

sufficient funding to business in order to give it strong likelihood of succeeding).

32.     Here, any Qualifying Bidder must be an entity with financial resources adequate

to perform under the respective executory contracts and unexpired leases.   Additionally, the

Debtor respectfully submits that the proposed cure procedures for the identification and payment

of Cure Amounts (the "Cure Procedures") are appropriate and reasonably tailored to provide

non-Debtor counterparties to potential Assigned Contracts with adequate notice of the proposed

assumption and assignment of their applicable contract, as well as the proposed Cure Amounts

related thereto, if any.   Such non-Debtor parties to the potential Assigned Contracts are given an

opportunity to object to the proposed assumption and assignment and, in the event an objection is

not resolved, this Court will adjudicate the dispute, including issues pertaining to adequate

assurance of future performance.   Accordingly, the Debtor submits that implementation of the

proposed Cure Procedures is appropriate in these cases.

**D.     The Sale of the Assets Is Authorized Under Bankruptcy Code Section 363(b)**

33.     At the conclusion of the Sale Hearing, the Debtor requests that the Court approve

the sale of the Assets to the Successful Bidder.[6]  The Debtor submits that the sale of the Assets

pursuant to a Successful Bid is in the best interest of the Debtor's estate and its creditors.

34.     Bankruptcy Code § 363(b)(1)  provides that a debtor, "after notice and a hearing,

may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11

U.S.C. § 363(b)(1).  To approve the use, sale or lease of property outside the ordinary course

---

[6] This portion of the relief is requested to be entered after the Sale Hearing in the form of the Sale Order.  The
Debtor hereby reserves the right to file supplemental pleadings in support of its request for entry of the Sale Order.

#5928469

of business, this Court need only determine that the Debtor's decision is supported by "some articulated business justification," as established by the Second Circuit in *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2nd Cir. 1983), which decision has been adopted in this circuit. *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986); *see also, Fulton State Bank* v. *Schipper,* 933 F.2d 513, 515 (7th Cir. 1991); *In re San Jacinto Glass Industries, Inc.,* 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988); *In re Condere Corp.,* 228 B.R. 615, 628-69 (Bankr. S.D. Miss. 1998).

35.     The business judgment rule shields a debtor's management from judicial second-guessing. *See In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions"). Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

36.     Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under § 363(b)(1). When applying the business judgment standard, courts show great deference to a debtor's business decisions. *See GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005); *In re First Wellington Canyon Assocs.*, 1989 U.S. Dist. LEXIS 10687, at *8-9 (N.D. Ill. September 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the

#5928469

bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

37.     The fairness and reasonableness of the consideration to be paid for the Assets by the Successful Bidder, as may be declared at the Sale Hearing, will be conclusively demonstrated by the exposure of the opportunity to the marketplace.  The Debtor has proposed a fair and open process for achieving the objective of obtaining the highest or best offer and sale of the Assets for the benefit of the Debtor's estate and its creditors.  The Debtor's decision to proceed with the sale process is consistent with sound business judgment.  Under the circumstances, the Bidding Procedures and Auction process represent the best way to achieve substantial consideration for the Debtor's business, and offer the best resolution to the Debtor's current financial situation in the manner that will maximize the value available to the Debtor's estate and its creditors.

**E.     The Sale of The Assets Free and Clear of Liens, Claims, and Interests Is Authorized Under Bankruptcy Code Section 363(f)**

38.     The Debtor respectfully submits that it is appropriate to sell the Assets free and clear of all interests, pursuant to Bankruptcy Code § 363(f), with all such interests attaching to the net sale proceeds of the Assets to the extent applicable.  Bankruptcy Code § 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

    a.     applicable nonbankruptcy law permits sale of such property free and clear of such interests;

    b.     such entity consents;

    c.     such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

    d.     such interest is in bona fide dispute; or

    e.     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

#5928469

11 U.S.C. § 363(f).  This provision is supplemented by Bankruptcy Code § 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

39.     Because Bankruptcy Code § 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets free and clear of the interests.  *In re Nature Leisure Times, LLC*, 2007 WL 4554276, *3 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied."); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code § 363(f) is written in the disjunctive; holding that the court may approve the sale 'free and clear' provided at least one of the subsections of § 363(f) is met).

40.     The Debtor believes that one or more of the tests under § 363(f) will be satisfied with respect to the transfer of the Assets pursuant to a Sale Order.  In particular, the Debtor believes that section 363(f)(2), (3) and/or (5) will be satisfied.

### F.      The Form, Manner and Extent of Notice of the Motion and the Proposed Sale are Appropriate and Adequate Under the Circumstances

41.     The Debtor will serve the Sale Notice and the Cure Notice in accordance with the Bidding Procedures Order, and will serve this Motion as set forth below.  The notice of the proposed Sale to be provided by the Debtor as set forth herein sufficiently describes the terms and conditions of the proposed Sale.

42.     Several sections of the Bankruptcy Code and Bankruptcy Rules dictate the sufficiency of notice and adequacy of service.  As discussed below, the content and manner of service of this Motion and the related notices satisfy all such requirements:

a.      <u>Section 363 Notice</u> – Bankruptcy Code section 363 provides that a trustee may sell property "after notice and hearing."  Under Section 102(1) of the Bankruptcy

#5928469

Code, the phrase "after notice and hearing" means "notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). As set forth above, creditors have been provided notice of the salient details regarding this Motion and the Sale Hearing. Accordingly, notice is sufficient under Bankruptcy Code section 363.

b.  <u>Bankruptcy Rule 2002</u> – Bankruptcy Rule 2002 requires twenty-one (21) days' notice of the proposed sale of property other than in the ordinary course of business. In addition, Bankruptcy Rule 2002 provides that notice of a sale shall "include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections." Fed. R. Bankr. P. 2002. As set forth above, the notice of this Motion that has been and will be provided by the Debtor satisfies each of these requirements.

c.  <u>Bankruptcy Rules 6004 and 6006</u> – Bankruptcy Rule 6004 requires that notice of sales of property out of the ordinary course of business complies with Bankruptcy Rule 2002. As set forth above, the Debtor has complied with Bankruptcy Rule 2002. Bankruptcy Rule 6006 requires notice of a motion to assume and assign an executory contract or unexpired lease to be served on the counterparty to such contract or lease, as well as on other parties in interest as the Court may direct. The Sale Notice and the Cure Notice have been or will be served on counterparties to the Assigned Contracts, thereby satisfying this requirement.

d.  <u>Procedural Due Process</u> – The notices of this Motion that are being provided as described herein, including the notice being provided by publication as set forth above, are "reasonably calculated" to apprise interested parties of the pendency of the matter and to afford them an opportunity to object. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). Parties in interest have been and should be found to have been afforded adequate notice of this Motion, the Sale, the Bidding Procedures and the other relief requested herein.

43.  The Debtor submits that the notice it has provided and intends to provide as outlined above with respect to the proposed Sale, the Bidding Procedures, and the Cure Amounts, as applicable, is reasonable and appropriate and constitutes good and adequate notice of the sale of the Assets and the procedures and proceedings related thereto and therefore should be approved by this Court.

#5928469

**N.      The Stay of the Sale Order Should be Waived**

44.      Pursuant to Bankruptcy Rules 6004(h) and 6006(d), an order authorizing the sale of property or the assignment of an unexpired lease is stayed for fourteen (14) days after the entry of an order unless the Court orders otherwise.

45.      The Debtor requests that this Court order that such stay is not applicable with respect to the sale of the Assets and assignment and assumption of the related executory contracts and/or unexpired leases.   To require the Debtor to effectively be liable under the applicable executory contracts and/or unexpired leases for an extra fourteen (14) days and to delay the closing and the resulting reductions of the Debtor's secured obligations and related adequate protection obligations will burden the estate and require unnecessary expenditures of the Debtor's limited resources.   The Debtor notes that similar requests to waive the stay imposed under Bankruptcy Rules 6004(h) and 6006(d) are routinely granted.   *See e.g. In re Synergy Pharm. Inc., et al.*, Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Jan. 7, 2019); *In re J & M Sales Inc., et al.*, Case No. 18-11801 (LSS) (Bankr. D. Del. Sept. 28, 2018); *In re Samuels Jewelers, Inc.*, Case No. 18-11818 (KJC) (Bankr. D. Del. Oct. 22, 2018); *In re Castex Energy Partners, L.P., et al.*, Case No. 17-35835 (MI) (Bankr. S.D. Tex. Nov. 9, 2017).

## V.  PRAYER

WHEREFORE, the Debtor respectfully requests that the Court enter the Bidding Procedures Order, substantially in the form filed herewith, issue the Sale Order (to be filed as a proposed order at a later date) after the Sale Hearing, and grant such other and further relief as may be just and proper under the circumstances.

Respectfully Submitted,

**BRACEWELL LLP**

By: */s/  William A. (Trey) Wood III*
William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bracewell.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bracewell.com
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

**PROPOSED COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION**

#5928469

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June 3, 2019, a true and correct copy of this document was served by electronic means as listed on the Court's ECF noticing system and, where available, via electronic mail upon all parties on the attached Master Service List. Furthermore, on June 4, 2019, a true and correct copy of this document will be served via U.S. Mail upon all parties on the attached Master Service List.

*/s/ William A. (Trey) Wood III*
William A. (Trey) Wood III

#5928469